UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TARA LEIGH PATRICK, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| | * | |
| v. | * | Civil Action No. 23-cv-10274-ADB |
| | * | |
| | * | |
| BLACKBOARD SPECIALTY | * | |
| INSURANCE COMPANY, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

     In 2019, Plaintiffs, twenty professional models, sued three Massachusetts-based strip clubs, alleging that the clubs used images of Plaintiffs in commercial advertisements without Plaintiffs' consent and without paying them. The lawsuit was resolved in a settlement, which, in pertinent part, required the clubs to assign their claims against their provider of commercial general liability insurance, Defendant Blackboard Specialty Insurance Company ("Blackboard"), to Plaintiffs. This insurance coverage action, in which Plaintiffs seek to recover from Blackboard for these claims, followed. Before the Court are Blackboard's motion for summary judgment, [ECF No. 64], and Plaintiffs' cross motion for summary judgment, [ECF No. 72]. For the reasons set forth below, Blackboard's motion for summary judgment is **GRANTED** and Plaintiffs' cross motion for summary judgment is **DENIED**.

## I.    RELEVANT BACKGROUND

### A.    Material Facts[1]

#### 1.    The Advertisements

Plaintiffs—Tara Leigh Patrick a/k/a Carmen Electra ("Electra"), Cielo Jean "CJ" Gibson ("Gibson"), Denise Trlica a/k/a Denise Milani ("Milani"), Julianne Klaren ("Klaren"), Rachel Bernstein a/k/a Rachel Koren ("Koren"), Rosa Acosta ("Acosta"), Abigail Ratchford ("Ratchford"),[2] Keeley Hazell ("Hazell"), Kimberly "Kim" Cozzens ("Cozzens"), Brenda Lynn Geiger ("Geiger"), Eva Pepaj ("Pepaj"), Hillary Fisher Vinson a/k/a Hillary Hepner ("Hepner"), Jessica Burciaga ("Burciaga"), Joanna Krupa ("Krupa"), Lina Posada ("Posada"), Sandra Valencia ("Valencia"), Tiffany Toth Gray ("Gray"), Camila Davalos ("Davalos"), Jennifer Walcott Archuleta ("Archuleta"), and Lucy Pinder ("Pinder"), [ECF No. 57 at 1–2]—are "well-known and in some case world renowned professional models." [ECF No. 77 ¶ 1]; see also [ECF No. 75 ¶ 6]. Between February 21, 2016, and February 21, 2018, three Massachusetts strip clubs—the Squire, Ten's Show Club, and the Golden Banana (the "Clubs")—owned and operated by MFRP Corp., M.J.F. Bowery Corp., and D&B Corp., respectively (collectively, the "Patrick Defendants"), [ECF No. 77 ¶¶ 2–3, 18–20], posted the following images of Plaintiffs online: (1) an October 28, 2016, Facebook post using Davalos's image, [ECF No. 77 ¶ 10]; [ECF No. 74-1 at 111 (image of Davalos on Ten's Show Club Facebook page)]; (2) an October 23, 2017 Facebook post using Milani's image, [ECF No. 77 ¶ 11]; [ECF No. 74-2 at 2 (image of

---

[1] The Court draws the facts from the parties' combined Rule 56.1 statement of material facts, which consists of Blackboard's Statement of Undisputed Material Facts, [ECF No. 66], Plaintiffs' Statement of Undisputed Material Facts, [ECF No. 74], Plaintiffs' Response to Blackboard's Statement of Undisputed Material Facts, [ECF No. 75], Blackboard's Response to Plaintiffs' Statement of Undisputed Facts, [ECF No. 77], and documents referenced therein.
[2] Plaintiffs' amended complaint contains inconsistent spellings of Ratchford's name. Compare [ECF No. 57 at 1 ("Ratchord")], with [id. ¶ 24 ("Ratchford").

Milani on the Golden Banana's Facebook page)]; (3) an October 25, 2017, Instagram post using Klaren's image, [ECF No. 77 ¶ 7]; [ECF No. 74-1 at 14 (image of Klaren on the bostonstripclubs Instagram)]; (4) an October 27, 2017, Instagram post using Ratchford's image, [ECF No. 77 ¶ 8]; [ECF No. 74-1 at 36 (image of Ratchford on the bostonstripclubs Instagram)]; and (5) a January 6, 2018, Facebook post using Hepner's image, [ECF No. 77 ¶ 9]; [ECF No. 74-1 at 99 (image of Hepner on The Squire Facebook page)].

### 2.     Initiation of the Patrick Action

In 2019, Plaintiffs sued the Patrick Defendants in Patrick v. D&B Corp., No. 19-cv-11445 (D. Mass.) (the "Patrick Action"), alleging that they had created the false impression that Plaintiffs worked at or endorsed the Clubs by using their images and likenesses in almost 100 advertisements on the Clubs' Instagram, X (formerly known as Twitter), and Facebook pages, in addition to posts on the Clubs' websites.[3]  [ECF No. 77 ¶¶ 1, 3]; [ECF No. 75 ¶¶ 6–7]. Plaintiffs' amended complaint in the Patrick Action asserted claims for (1) false association in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (2) false advertisement in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (3) violation of the common law right of privacy; (4) violation of Mass. Gen. Laws ch. 214, § 1B (right of privacy); (5) violation of Mass. Gen. Laws ch. 214, § 3A (unauthorized use of individual's name, portrait, or picture); (6) violation of the common law right of publicity; (7) violation of Mass. Gen. Laws. ch. 93A, § 11 (unfair trade practices); (8) defamation; (9) negligence and respondeat superior; (10) conversion; (11) unjust enrichment; and (12) quantum meruit.  [ECF No. 77 ¶ 4]; [ECF No. 75 ¶ 12]; [ECF No. 27-1].

---

[3] The initial complaint in the Patrick Action included only nine of the current Plaintiffs, and only named D&B Corp., and an individual, Mark Filtranti, as defendants; the other eleven Plaintiffs and the other two Patrick Defendants, MFRP Corp. and M.J.F. Bowery Corp., were added in the amended complaint.  See [ECF No. 75 ¶¶ 4–5].

### 3.     Blackboard's Denial of Coverage

The Patrick Defendants notified their commercial general liability insurance carrier,
Blackboard, of the Patrick Action on March 13, 2020.  [ECF No. 75 ¶ 16].  On August 26, 2020,
Sedgwick, Blackboard's third-party administrator, sent a letter denying coverage under the
2017–18 Policy.  [Id. ¶ 17]; [ECF No. 74-5 at 2].  As relevant here, Sedgwick's position was that
the "Material Published Prior To Policy Period" exclusion and the "Infringement Of Copyright,
Patent, Trademark, Or Trade Secret" exclusion barred coverage for the claims in the original
complaint in the Patrick Action.  [ECF No. 74-5 at 11–12].  On January 14, 2022, after receiving
Plaintiffs' amended complaint in the Patrick Action, Blackboard again denied coverage.  [ECF
No. 75 ¶¶ 18–19].

### 4.     The Patrick Action Settlement

On September 27, 2022, Plaintiffs and the Patrick Defendants entered into a settlement
agreement pursuant to which the Patrick Defendants consented to a judgment of $1,895,000 in
Plaintiffs' favor, which was divided among the individual Plaintiffs.  [ECF No. 77 ¶ 37]; [ECF
No. 75 ¶¶ 13, 15]; [ECF No. 57-1 (Patrick judgment)].[4]  The Patrick Defendants also allegedly
assigned their rights under their commercial general liability insurance policies provided by
Blackboard to Plaintiffs for the period during which the Patrick Defendants allegedly used
Plaintiffs' images.  [ECF No. 75 ¶ 23]; [ECF No. 57 ¶ 7].

### 5.     The Policies

The Patrick Defendants had commercial general liability insurance coverage under
Blackboard policy ENHSGL 00519-00-16 for the period from February 21, 2016, to February

---

[4] The settlement agreement is not part of the summary-judgment record and not available on the
public docket for Case No. 19-cv-11445.

21, 2017 (the "2016–17 Policy"), and Blackboard policy ENHSGL 00519-01-17 for the period

from February 21, 2017 to February 21, 2018 (the "2017–18 Policy," and with the 2016–17

Policy, the "Policies").  [ECF No. 77 ¶¶ 19–20]; [ECF Nos. 74-3, 74-4 (policies)].[5]  The parties'

dispute in this action centers on the Policies' coverage for "personal and advertising injury" and

the applicability of certain listed exclusions.  [ECF No. 75 ¶ 25].  As relevant here, both Policies

contained the following identical provisions:

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply…

> **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

…

**2. Exclusions**

This insurance does not apply to:

…

> **c. Material Published Prior To Policy Period**

> "Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

[ECF No. 75 ¶ 3]; [ECF No. 74-3 at 39]; [ECF No. 74-4 at 37].  Both Policies also had an

intellectual property exclusion titled "Infringement Of Copyright, Patent, Trademark Or Trade

---

[5] The Court has reproduced the policy numbers as found in the Policies themselves, see [ECF No. 74-3 at 3]; [ECF No. 74-4 at 3]; they differ slightly from the numbers in the parties' joint Rule 56.1 statements, [ECF No. 77 ¶¶ 19–20].

Secret," but the wording of that exclusion differed between the Policies.  [ECF No. 74-3 at 40];

[ECF No. 74-4 at 38].  The 2016–17 Policy excluded coverage for:

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

[ECF No. 74-3 at 40].  The 2017–18 Policy, by contrast, excluded coverage for:

### i. Infringement Of Copyright, Patent, Trademark Or Trade Secret

**(1)** "Personal and advertising injury" arising out of the actual or alleged infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

**(2)** "Personal and advertising injury" arising out of the actual or alleged use of another's images, photographs, likenesses or personal attributes whether altered or unaltered.

[ECF No. 74-4 at 38].

The Policies' definitions of "personal and advertising injury" also differed.  The 2016–17

Policy defined "personal and advertising injury" as follows:

**15.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;

**b.** Malicious prosecution;

**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

> **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy.

[ECF No. 74-3 at 48].  The 2017–18 Policy included the same definition but added the following subsection, Section 15.f:

> **f.** Oral or written publication, in any manner, of another's images, photographs, likenesses or personal attributes.

[ECF No. 74-4 at 46].

### B.    Procedural History

On February 1, 2023, Plaintiffs initiated this coverage action against Blackboard, United Specialty Insurance Company ("USLI"), and Watford Insurance Company ("Watford").[6]  [ECF No. 1].  Blackboard filed a partial motion to dismiss for lack of personal jurisdiction claims that were based on an underlying New York state lawsuit, [ECF No. 31], which Plaintiffs opposed, [ECF No. 35].  This Court dismissed the motion as moot after Plaintiffs moved to amend their complaint to remove claims based on the New York lawsuit.  [ECF No. 55]; [ECF No. 56].  In July 2023 and June 2024, Plaintiffs settled with USLI and Watford, dismissing their claims against them, [ECF No. 75 ¶ 21]; [ECF No. 39]; [ECF No. 46], and, on December 9, 2024, Plaintiffs filed the operative amended complaint, which named only Blackboard as a defendant, [ECF No. 57].  The amended complaint asserts causes of action for breach of contract (Count I) and declaratory judgment (Count II), seeking damages, including compensation for the costs and expenses incurred by the Patrick Defendants in the Patrick Action, and a declaration that Blackboard had an obligation to defend and indemnify the Patrick Defendants.  See [id. ¶¶ 62, 73].  On July 16, 2025, Blackboard filed a motion for summary judgment, [ECF No. 64], and, on August 29, 2025, Plaintiffs filed a cross motion for summary judgment, [ECF No. 72], and

---

[6] The initial complaint in this action included four additional plaintiffs, who were dropped in the amended complaint.  Compare [ECF No. 1], with [ECF No. 57].

opposed Blackboard's motion, [ECF No. 73].  On September 30, 2025, Blackboard opposed

Plaintiffs' cross motion, [ECF No. 76], and, on October 21, 2025, Plaintiffs replied, [ECF No.

78].  On November 21, 2025, Blackboard filed a motion to strike parts of Plaintiffs' opposition

or, in the alternative, for leave to file a surreply, [ECF No. 79], which the Court granted in part

and denied in part, permitting Blackboard to file its proposed surreply, [ECF No. 80].[7]

## II.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  An issue is considered "genuine" when "the evidence of record permits a

rational factfinder to resolve it in favor of either party."  Borges ex rel. S.M.B.W. v. Serrano-

Isern, 605 F.3d 1, 4–5 (1st Cir. 2010) (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896

F.2d 5, 8 (1st Cir. 1990)).  A fact is considered "material" when "its existence or nonexistence

has the potential to change the outcome of the suit."  Id. at 5 (citing Martinez v. Colon, 54 F.3d

980, 984 (1st Cir. 1995)).

"To succeed in showing that there is no genuine dispute of material fact, the moving

party must direct [the Court] to specific evidence in the record that would be admissible at trial."

Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015).  "That is, it must

'affirmatively produce evidence that negates an essential element of the non-moving party's

claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party

will be unable to carry its burden of persuasion at trial.'"  Id. at 4–5 (quoting Carmona v. Toledo,

---

[7] Although Blackboard has not filed a surreply, the Court has considered the proposed surreply
attached to Blackboard's motion to strike, [ECF No. 79-3].

215 F.3d 124, 132 (1st Cir. 2000)).  Once the moving party has laid out its basis for summary judgment, the burden shifts to the party opposing summary judgment to demonstrate, "with respect to each issue on which she would bear the burden of proof at trial, . . . that a trier of fact could reasonably resolve that issue in her favor."  Borges, 605 F.3d at 5.

On a motion for summary judgment, the Court reviews "the entire record in the light most hospitable to the party opposing summary judgment."  Podiatrist Ass'n v. La Cruz Azul de P.R., Inc., 332 F.3d 6, 13 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  Where inferences are to be drawn from the proffered facts, those inferences "must be viewed in the light most favorable to the party opposing the motion."  Oleskey ex rel. Boumediene v. U.S. Dep't of Def., 658 F. Supp. 2d 288, 294 (D. Mass. 2009) (quoting Founding Church of Scientology of Wash., D.C., Inc. v. Nat'l Sec. Agency, 610 F.2d 824, 836 (D.C. Cir. 1979)).  The Court, however, "safely may ignore conclusory allegations, improbable inferences, and unsupported speculation."  Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (internal quotation and citation omitted).

When a court faces cross-motions for summary judgment, it applies the above analysis, unaltered, "to each motion in turn."  Wilkinson v. Chao, 292 F. Supp. 2d 288, 291 (D.N.H. 2003) (citing Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)); see also Cochran, 328 F.3d at 6 ("This framework is not altered by the presence of cross-motions for summary judgment.").

### B.    Massachusetts Insurance Law

"The interpretation of an insurance policy is a question of law for the court."  Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co., 734 F.3d 51, 55 (1st Cir. 2013) (quoting Valley Forge Ins. Co. v. Field, 670 F.3d 93, 97 (1st Cir. 2012)).  Under Massachusetts law,

insurance policies are construed using general rules of contract interpretation.  Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000).  The Court "construe[s] the words of the policy in their usual and ordinary sense," U.S. Liab. Ins. Co. v. Benchmark Constr. Servs., Inc., 797 F.3d 116, 119 (1st Cir. 2015) (quoting Bos. Gas Co. v. Century Indem. Co., 910 N.E.2d 290, 304 (Mass. 2009)), and considers "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered."  Trs. of Tufts Univ. v. Com. Union Ins. Co., 616 N.E.2d 68, 71 (Mass. 1993).  Ambiguities "are to be construed against the insurer and in favor of the insured," U.S. Liab. Ins. Co., 797 F.3d at 120, a rule that "applies with particular force to exclusionary provisions," id. (quoting Boazova v. Safety Ins. Co., 968 N.E.2d 385, 390 (Mass. 2012)).  Whether the terms of a contract are ambiguous is a question of law.  Suffolk Constr. Co. v. Ill. Union Ins. Co., 951 N.E.2d 944, 947–48 (Mass. 2011) (citing Bank v. Thermo Elemental Inc., 888 N.E.2d 897, 907 (Mass. 2008)).  Though ambiguity exists when a policy provision is subject to multiple interpretations, it does not follow that there is ambiguity simply because the parties disagree as to a policy's plain meaning.  See Brazas Sporting Arms, Inc., 220 F.3d at 4–5.

Plaintiffs have "the initial burden of showing that the case involves a generally covered risk under the policy."  Stor/Gard, Inc. v. Strathmore Ins. Co., 717 F.3d 242, 247 (1st Cir. 2013) (citing Boazova, 968 N.E.2d at 390).  If they meet that burden, then "the burden shifts to the insurer . . . to show an exclusion applies."  Id.  "And if the insurer satisfies that burden, the burden shifts back to the insureds to show an exception to the exclusion holds sway."  Id.

With respect to coverage obligations, Massachusetts law distinguishes between an insurer's (broader) duty to defend the insured and its (narrower) duty to indemnify the insured for any covered claims.  See Stormo v. State Nat'l Ins. Co., 116 F.4th 39, 45 (1st Cir. 2024), cert.

denied, 145 S. Ct. 1430, 221 L. Ed. 2d 555 (2025).  When a complaint is filed against an insured,

the insurer has a duty to defend the insured "when the allegations in [the] complaint are

reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the

policy terms," but the insurer has no such duty "when the allegations in the underlying complaint

lie expressly outside the policy coverage and its purpose."  Federated Mut. Ins. Co. v. Peterson's

Oil Serv., Inc., 155 F.4th 1, 7 (1st Cir. 2025) (quoting Metro. Prop. & Cas. Ins. Co. v. Morrison,

951 N.E.2d 662, 667 (Mass. 2011)); see also Billings v. Com. Ins. Co., 936 N.E.2d 408, 413

(Mass. 2010) ("In order for the duty of defense to arise, the underlying complaint need only

show, through general allegations, a possibility that the liability claim falls within the insurance

coverage." (quoting Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 341 (Mass. App. Ct.

1983))).  If an insurer has a duty to defend any of the underlying counts in the complaint, it has a

duty to defend the entire lawsuit, a principle that is commonly referred to as "in for one, in for

all."  Federated Mut. Ins. Co., 155 F.4th at 7; see also Saint Consulting Grp., Inc. v. Endurance

Am. Specialty Ins. Co., 699 F.3d 544, 550 (1st Cir. 2012) ("If even one of the counts in either of

the complaints falls within the coverage provisions but outside any exclusion, [the defendant]

would have a duty to defend the entire lawsuit.").  If the insurer fails to defend the lawsuit, "it is

liable for all defense costs and (assuming policy coverage) the entire resulting judgment or

settlement, unless liability can be allocated among covered and uncovered claims."  Liberty Mut.

Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 63 (1st Cir. 2001).

    The insurer's duty to indemnify the insured for any covered claims is "determined by the

facts, which are usually established at trial," Narragansett Bay Ins. Co. v. Kaplan, 146 F. Supp.

3d 364, 372 (D. Mass. 2015) (quoting Travelers Ins. Co. v. Waltham Indus. Lab'ys Corp., 883

F.2d 1092, 1099 (1st Cir. 1989)), or, if the underlying case settles before trial, "in the basis of the

settlement and . . . the undisputed facts," Travelers Ins. Co., 883 F.2d at 1099; see also TIG Ins. Co. v. Old Republic Ins. Co., No. 18-cv-12548, 2021 WL 2211435, at *3 (D. Mass. May 5, 2021) (considering the "undisputed facts in the parties' joint statement of material facts" and the "settlement agreement" in the underlying action); House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., 775 F. Supp. 2d 302, 311 (D. Mass. 2011) ("The dispositive issue in an indemnification analysis is whether the third party plaintiff's theory of litigation, and the eventual settlement or result, 'encompassed allegedly wrongful conduct by the [insured] in his insured capacity, as defined in the [insurance] Policy.'" (quoting D'Amelio v. Fed. Ins. Co., No. 02-cv-12174, 2004 WL 937328, at *7 (D. Mass. Apr. 28, 2004))).  That said, because the duty to indemnify is narrower than the duty to defend, it follows that an insurer who has no duty to defend necessarily also does not have a duty to indemnify.  See Sanders v. Phx. Ins. Co., 843 F.3d 37, 46 (1st Cir. 2016).

## III.    DISCUSSION

Blackboard argues that the intellectual property exclusions in the Policies bar coverage and that no exception to those exclusions applies and, further, that, in any event, only Klaren, Ratchford, Hepner, and Davalos have identified advertisements that fall within the Policies' coverage periods.  [ECF No. 65 at 11–19]; [ECF No. 76 at 4–8].  Plaintiffs counter that no exclusion bars coverage and that Blackboard had both a duty to defend the Patrick Action and a duty to indemnify the Patrick Defendants for claims by Klaren, Ratchford, Hepner, Davalos, and Milani.  [ECF No. 73 at 8–17, 23]; [ECF No. 78 at 1–2, 15].

### A.    Images Outside Coverage Periods and Undated Images

Blackboard argues that claims by Plaintiffs whose images the Patrick Defendants did not use during the Policies' combined coverage periods (February 21, 2016, to February 21, 2018)

and claims by Plaintiffs who have not established that their images were used during that time cannot give rise to a duty to defend or indemnify under the Policies.  [ECF No. 65 at 17–19].

The Court holds that the Patrick Defendants' use of images of Plaintiffs outside the coverage periods does not give rise to a duty to defend or indemnify on Blackboard's part, a conclusion that Plaintiffs do not appear to dispute.  See [ECF No. 73 at 20–21]; [ECF No. 78 at 15–16].  The amended complaint in the Patrick Action does not suggest that the Patrick Defendants posted images of Archuleta, Burciaga, Cozzens, Electra, Gibson, Hazell, Koren, Krupa, Milani,[8] Posada, or Valencia during the coverage periods, see [ECF No. 27-1 ¶¶ 42, 45, 48, 54, 56, 59, 80, 83, 86, 89, 95], see also [ECF No. 74-1 at 3–4, 6–10, 12, 16, 101, 103, 105, 107–09, 113], and the Plaintiffs in this action have conceded that the Patrick Defendants posted no images of these Plaintiffs during the Policies' coverage periods, [ECF No. 75 ¶ 28].[9]

The Court also holds that Blackboard had no duty to defend or indemnify the Patrick Defendants for claims by Acosta, Geiger, Gray, Pepaj, and Pinder because Plaintiffs' allegations do not sufficiently show that these claims arose during the Policies' coverage periods (rather than, for example, before them, such that they would be subject to the Policies' prior-publication

---

[8] In response to interrogatories served upon them in this action, Milani stated that no image of her was published during the Policies' coverage periods.  [ECF No. 75 ¶ 28]; [ECF No. 66-7 at 19].  In responding to Blackboard's statement of material facts, however, Plaintiffs state that an October 23, 2017, image of Milani was "uncovered in discovery."  [Id.]; see also [ECF No. 74-2 at 2]; Plaintiffs' statement of material facts also refers to a further, January 29, 2018, image, [ECF No. 77 ¶ 11], but the image in question appears to have been posted on October 1, 2018, not January 29, 2018, [ECF No. 74-1 at 12].  Blackboard appears to dispute the authenticity of the October 23, 2017, image, maintaining that Plaintiffs did not produce it in response to Blackboard's discovery request, and that it is unsupported by any affidavit or other sworn statement.  [ECF No. 77 ¶ 11]; see also [ECF No. 76 n. 9].  For purposes of the Court's discussion here, however, the dispositive fact is that Plaintiffs' amended complaint in the Patrick Action did not mention the October 23, 2017 image (or any other image posted during the Policies' coverage periods).  See [ECF No. 27-1 ¶ 48].

[9] Plaintiffs state that their settlements with USLI and Watford, who provided coverage during other relevant periods, covered these Plaintiffs' claims.  [ECF No. 73 at 20]; [ECF No. 75 ¶ 21].

exclusion).  See [ECF No. 74-1 at 18–34, 38–70, 72, 74–97, 115].  To trigger a duty to defend, Plaintiffs' allegations in the Patrick Action were required to show a possibility that these Plaintiffs' claims fell within the Policies' coverage.  See Federated Mut. Ins. Co., 155 F.4th at 7. Neither Plaintiffs' allegations, [ECF No. 27-1 ¶¶ 62, 68, 71, 74, 98], nor the attachments to the amended complaint in the Patrick Action, [ECF No. 74-1 at 18–34, 38–70, 72, 74–97, 115], mention when these images were posted.  The Court therefore holds that Plaintiffs did not establish the requisite possibility that the images of these Plaintiffs were posted during the coverage periods.  See Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co., 954 F.3d 397, 406 (1st Cir. 2020) (finding that plaintiff failed to show "possibility that the liability claim falls within the insurance coverage" where underlying complaint "d[id] not mention the precise location, time, and repairs undertaken" (quoting Billings, 936 N.E.2d at 414)).  Because Blackboard had no duty to defend against these Plaintiffs' claims, it also did not have a duty to indemnify the Patrick Defendants for them.[10]  See Sanders, 843 F.3d at 46.

Nevertheless, Blackboard does not argue that the allegations in the Patrick Action did not create the possibility that any claim by any Plaintiff arose during the Policies' coverage periods—indeed, Blackboard in this action admits that claims of other Plaintiffs fell within the coverage periods.  E.g., [ECF No. 77 ¶ 7].  Thus, even though Acosta, Geiger, Gray, Pepaj, and

---

[10] The Court notes that the summary-judgment record also does not establish when the Patrick Defendants posted images of these Plaintiffs.  See [ECF No. 74-1 at 18–34 (undated images of Acosta)]; [ECF No. 74-1 at 72 (undated image of Geiger)]; [ECF No. 74-1 at 74–97 (undated image of Pepaj)]; [ECF No. 74-1 at 38–70 (undated images of Gray)]; [ECF No. 74-1 at 115 (undated image of Pinder)]; [ECF No. 75 ¶ 29 (summarizing interrogatory responses)].  Because Plaintiffs bear the burden of proof on the issue of coverage, Stor/Gard, Inc., 717 F.3d at 247, their failure to create a triable issue on whether the images were used during the coverage periods provides an additional basis for granting summary judgment to Blackboard on these Plaintiffs' duty-to-indemnify claim.  See Ocasio-Hernández, 777 F.3d at 4; Borges, 605 F.3d at 5.

Pinder's allegations did not sufficiently show that their claims fell within the coverage periods, the fact that other Plaintiffs' claims did allegedly occur within the coverage periods would create a duty for Blackboard to defend the Patrick Action in its entirety, if such a duty existed under the Policies.  See Federated Mut. Ins. Co., 155 F.4th at 7.  Furthermore, for any images that Plaintiffs have established were posted during the coverage periods, Blackboard would have a duty to indemnify the Patrick Defendants, again provided that such a duty existed under the Policies.  It is to these issues that the Court turns next, examining each policy in turn.

### B.    Coverage Under the 2016–17 Policy

The only Plaintiff whose claims fall within the 2016–17 Policy's coverage period is Davalos, whose image appeared in an October 28, 2016, Ten's Show Club Facebook post.  [ECF No. 74-1 at 111].  The parties dispute whether that policy's intellectual property exclusion bars coverage for Davalos's claims, as Blackboard argues, [ECF No. 76 at 4–8, 15 n.8], or whether her claims fit within that exclusion's carve-out for "advertising ideas," as Plaintiffs argue, [ECF No. 73 at 9–13].

As a threshold issue, Plaintiffs argue that the Court should deny Blackboard's motion with respect to the 2016–17 Policy because Blackboard did not address that policy's intellectual property exclusion, which differs from the exclusion in the 2017–18 Policy, in its motion and only raised arguments about it in its reply brief.  [ECF No. 73 at 8–9].  It is true that, as a general matter, courts do not consider arguments raised for the first time in a reply brief.  See, e.g., Facey v. Dickhaut, 91 F. Supp. 3d 12, 22 (D. Mass. 2014).  Here, however, Blackboard addressed the 2016–17 Policy's exclusion in a combined brief that served as both a reply in support of Blackboard's motion and an opposition to Plaintiffs' cross motion, [ECF No. 76 at 1, 4–8], and Plaintiffs responded to Blackboard's arguments at length, [ECF No. 78 at 1–8].  It would elevate

form over substance to deem Blackboard's arguments regarding the 2016–17 Policy waived for

purposes of Blackboard's motion, but not for purposes of Plaintiffs' cross motion, and the Court

declines to do so.  See WorldNet Telecomms., Inc. v. Telecomms. Regul. Bd. of P.R., 707 F.

Supp. 2d 163, 180 (D.P.R. 2009) (considering argument raised in reply brief that also served as

opposition to cross motions), aff'd sub nom., P.R. Tel. Co. v. Telecomms. Regul. Bd. of P.R.,

665 F.3d 309 (1st Cir. 2011).

On the merits, the Court finds that Blackboard did not have a duty to defend or indemnify

the Patrick Defendants for claims by Plaintiffs that fell within the 2016–17 Policy's coverage

period, including the claims by Davalos.  The parties to the Patrick Action do not dispute that

Davalos's claims fell under the 2016–17 Policy's coverage provision for personal and

advertising injury, see [ECF No. 65 at 12]; [ECF No. 73 at 8, 10], but disagree as to whether that

policy's intellectual property exclusion bars coverage for these claims.  [ECF No. 76 at 4]; [ECF

No. 78 at 2–8].  Blackboard argues that Plaintiffs' claims in the Patrick Action are premised on

the Patrick Defendants' use of Plaintiffs' image and likeness, and, as such, are barred under the

intellectual property exclusion, [ECF No. 76 at 4], which applies to "'[p]ersonal and advertising

injury' arising out of the infringement of copyright, patent, trademark, trade secret or other

intellectual property rights," [ECF No. 74-3 at 40].  Plaintiffs' primary response is that their

claims fall under an exception to the exclusion for "the use of another's advertising idea."  [ECF

No. 78 at 2–8]; see also [ECF No. 74-3 at 40].[11]

Under Massachusetts law, an injury arises out of the use of another's advertising idea

"[i]f the insured took an idea for soliciting business or an idea about advertising."  Sterngold

---

[11] Plaintiffs also refer to "additional reasons" why the exclusion should not apply, noting that
their briefing on the 2017–18 Policy discusses "some" of them.  [ECF No. 73 at 10 n.7].
Plaintiffs' arguments on the 2017–18 Policy are discussed infra.

Dental, LLC v. HDI Glob. Ins. Co., 929 F.3d 1, 7 (1st Cir. 2019) (quoting Holyoke Mut. Ins. Co. v. Vibram USA, Inc., 106 N.E.3d 572, 579 (Mass. 2018)).  The concept of an "advertising idea" is "broad," but "it is not all-encompassing."  Holyoke, 106 N.E.3d at 579.  "[A]n advertising idea focuses on how the public's attention is being drawn to a business or product and not necessarily on the business or product itself."  Id. at 581.  For example, the production and sale of a "distinctively designed teapot" may, "in the banal sense," function as "an advertisement for [the teapot] and its obvious features," but that does not transform the teapot itself into an advertising idea, which is "something separate from the product."  Ekco Grp., Inc. v. Travelers Indem. Co., 273 F.3d 409, 412–14 (1st Cir. 2001) (applying New Hampshire law).  In other words, "a nonadvertising idea that is later advertised for sale" is not an advertising idea.  Holyoke, 106 N.E.3d at 579.

Here, the Patrick Defendants' use of Davalos's image does not amount to the use of another's advertising idea because Plaintiffs in the Patrick Action did not allege, and have not here established, that the underlying image was an advertising idea, rather than a nonadvertising idea that the Patrick Defendants repurposed for advertising.  See id.; Princeton Excess & Surplus Lines Ins. Co. v. A.H.D. Hou., Inc., 84 F.4th 274, 284 (5th Cir. 2023) (applying Texas law and holding that "while the [models'] curated photographs could . . . be used to promote an array of business ventures, the images themselves would not be the 'advertising idea'").  Specifically, there is no indication in the amended complaint in the Patrick Action that the image of Davalos that appeared in the Ten's Show Club's October 28, 2016, Facebook post was originally used for advertising purposes.  See [ECF No. 27-1 ¶¶ 92–93 (allegations regarding Davalos's image)].  Plaintiffs do not allege where the Patrick Defendant obtained the image of Davalos or provide any information about its original use.  Contrast [id.], with [id. ¶ 40 ("[I]n certain cases

Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market herself to potential clients, grow her fan base, and build and maintain her brand." (emphasis added))].  Even considering the lenient standard for assessing an insurer's duty to defend, see Federated Mut. Ins. Co., 155 F.4th at 7, Plaintiffs' allegations regarding Davalos do not trigger a duty to defend because Plaintiffs plainly do not allege an injury arising out of the Patrick Defendants' use of Davalos's advertising idea.  Because Blackboard did not have a duty to defend against Davalos's claims, it also did not have a duty to indemnify the Patrick Defendants for them.  See Sanders, 843 F.3d at 46.

In resisting this conclusion, Plaintiffs cite to images of Electra, Acosta, and Gray, and argue these images show that the Patrick Defendants misappropriated their advertising ideas, not just their images.  [ECF No. 78 at 4, 6]; see also [ECF No. 74-1 at 3–4 (Electra)]; [id. at 18–34 (Acosta)]; [id. at 38–70 (Gray)].  As noted supra, however, nothing in the amended complaint in the Patrick Action or, for that matter, in the summary-judgment record here, raises the possibility that the Patrick Defendants misappropriated those images during the 2016–17 Policy's coverage period.  See [ECF No. 27-1 ¶¶ 42, 62, 68]; [ECF No. 75 ¶ 29]; [id. ¶ 28 ("In response to Blackboard's Discovery Requests, . . . Electra . . . stated that 'no images of [her] were published between February 21, 2016 and February 21, 2018.")].  Nor does the amended complaint, which makes only vague allegations about "certain cases" in which the Patrick Defendants misappropriated Plaintiffs' advertising ideas, [ECF No. 27-1 ¶ 40], in any way suggest that the underlying images of Electra, Gray, or Acosta were "idea[s] for soliciting business or . . . idea[s] about advertising," Sterngold Dental, LLC, 929 F.3d at 7 (quoting Holyoke, 106 N.E.3d at 579).

Accordingly, claims based on these images cannot give rise to a duty defend or indemnify under the 2016–17 Policy.

### C.    Coverage Under the 2017–18 Policy

Blackboard argues that the intellectual property exclusion in the 2017–18 Policy, which applies to "'[p]ersonal and advertising injury' arising out of the actual or alleged use of another's images, photographs, likenesses or personal attributes," [ECF No. 74-4 at 38], bars coverage for all claims falling within the 2017–2018 coverage period.  [ECF No. 65 at 11–17].  Plaintiffs argue that (1) Blackboard's failure to provide notice that the 2017–18 Policy reduced coverage voids the exclusion entirely; (2) even if the exclusion is not void, the exclusion's heading makes clear that the exclusion applies only to copyright, patent, trademark, or trade-secret infringement claims; and (3) if the Court adopts Blackboard's reading of the exclusion, it would render coverage illusory and, thus, void the exclusion.  [ECF No. 73 at 11–20].

The Court holds that the intellectual property exclusion bars coverage for Plaintiffs' claims because those claims "arise[] out of" the Patrick Defendants' "actual or alleged use of [Plaintiffs'] images, photographs, likeness or personal attributes."  [ECF No. 74-4 at 38]. "Under Massachusetts law, 'arising out of' indicates a wide range of causation."  Sterngold Dental, 929 F.3d at 8; see also Brazas Sporting Arms, Inc., 220 F.3d at 7 ("Under Massachusetts law, 'arising out of' 'indicates a wider range of causation than the concept of proximate causation in tort law.'" (quoting Rischitelli v. Safety Ins. Co., 671 N.E.2d 1243, 1245 (Mass. 1996))).  "Arising out of" has been interpreted to mean "'originating from,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with.'"  Sterngold Dental, 929 F.3d at 8 (quoting Brazas Sporting Arms, Inc., 220 F.3d at 7).  Here, Plaintiffs' claims in the Patrick Action all originated from the Patrick Defendants' use of their images.  Specifically, Plaintiffs'

claims in the Patrick Action included claims for (1) false advertising, based on the Patrick Defendants' posting of images of Plaintiffs who were not employed by nor agreed to appear in advertisements for them; (2) false association, based on the Patrick Defendants' creating the false impression that Plaintiffs were associated with the Clubs through the images; violations of (3) the common-law and (4) statutory rights of privacy, based on the Patrick Defendants' use of Plaintiffs' images without their consent; (5) the unauthorized use of an individual's name, portrait, or picture, based on the Patrick Defendants' use of Plaintiffs' images without permission; (6) violations of the common-law right of publicity, based on the Patrick Defendants' misappropriation of the exclusive commercial interest Plaintiffs had in their images; (7) unfair trade practices, based on the Patrick Defendants' misuse of Plaintiffs' images despite knowing that there was no association between Plaintiffs and the Clubs; (8) defamation, based on the images' falsely associating Plaintiffs with stripping and the Clubs; (9) negligence and respondeat superior, based on the Patrick Defendants' breach of their duty to ensure that Plaintiffs' property and publicity rights in their images were not infringed; (10) conversion, based on the Patrick Defendants' wrongful use of the images for their own financial gain; (11) unjust enrichment, based on the Patrick Defendants' benefitting financially from publishing the images without compensating Plaintiffs; and (12) quantum meruit, based on the Patrick Defendants' dilution of the commercial value of Plaintiffs' images by wrongfully associating Plaintiffs with the Clubs.  [ECF No. 27-1 at 27–41].  Because all of Plaintiffs' claims in the Patrick Action arose out of the Patrick Defendants' alleged wrongful use of Plaintiffs' images, the intellectual property exclusion bars coverage for them, and Blackboard therefore had neither a duty to defend nor to indemnify with respect to them under the 2017–18 Policy.

Plaintiffs' argument that the language of the exclusion's heading—"Infringement Of Copyright, Patent, Trademark Or Trade Secret"—shows that the exclusion does not apply to all of Plaintiffs' claims in the Patrick Action, [ECF No. 73 at 13–16], does not change the Court's conclusion.  Under Massachusetts law, "[a]s long as the meaning of a particular exclusion remains clear, its language must be given effect."  Certain Interested Underwriters at Lloyd's v. Stolberg, 680 F.3d 61, 68 (1st Cir. 2012) (citing Hanover Ins. Co. v. Locke, 624 N.E.2d 615, 617 (Mass. App. Ct. 1993)).  Here, the plain language of the exclusion unambiguously bars coverage for "'[p]ersonal and advertising injury' arising out of the actual or alleged use of another's images," [ECF No. 74-4 at 38], regardless of the nature or cause of action of the underlying claim.  The Court declines to read the heading as a limitation on that plain language or to find that it renders the provision ambiguous.  See Jordan R. Plitt et al., 2 Couch on Insurance § 22:6 (3d ed. 2025) ("[W]hile a caption may be used to explain an ambiguity in the operative part of the clause, a caption may not be used to create ambiguity where none exists."); Amherst Country Club, Inc. v. Harleysville Worcester Ins. Co., 561 F. Supp. 2d 138, 141, 148 (D.N.H. 2008) (applying New Hampshire law and rejecting argument that "an ambiguity . . . results from the exclusion's title"); Res. Bank v. Progressive Cas. Ins. Co., 503 F. Supp. 2d 789, 794 (E.D. Va. 2007) (applying Virginia law and noting that "ambiguity does not arise merely because an exclusion appears below an imperfectly descriptive heading").  Moreover, Plaintiffs' reading of the exclusion would render part of the exclusion superfluous:  subsection (1) explicitly refers to injury "arising out of the actual or alleged infringement of copyright, patent, trademark, trade secret or other intellectual property rights," but subsection (2) is broader, referring to injury "arising out of the actual or alleged use of another's images, photographs, likeness or personal

attributes."[12]  [ECF No. 74-4 at 37–38].  If Plaintiffs were correct that the exclusion's heading limits the entire exclusion to copyright, patent, trademark, and trade secret claims, subsection (1) would be unnecessary.  Blackboard's interpretation of the exclusion is preferable because it "gives a reasonable meaning to all of the provisions," whereas Plaintiffs' interpretation "leaves a part useless."[13]  House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., 775 F. Supp. 2d 302, 309 (D. Mass. 2011) (quoting Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 793 N.E.2d 1252, 1256 (Mass. App. Ct. 2003)).

By the same token, Plaintiffs' argument that the exclusion is, at a minimum, ambiguous, and thus should be construed against Blackboard, [ECF No. 73 at 15–16], is unavailing.  As explained supra, the Courts finds that the exclusion unambiguously precludes coverage because Plaintiffs' proposed construction of the exclusion is not supported by the text.  See Clark Sch. for Creative Learning, 734 F.3d at 57 ("[W]hen a contract is not ambiguous, a party can have no reasonable expectation of coverage when that expectation would run counter to the unambiguous language of an insurance policy."); Makrigiannis v. Nintendo of Am., Inc., 815 N.E.2d 1066, 1070 (Mass. 2004) ("[W]here there are two rational interpretations of policy language, the

---

[12] The Court notes that, at least with respect to the 2016–17 Policy, Plaintiffs do not squarely dispute that their claims "aris[e] out of the actual or alleged infringement of . . . other intellectual property rights," see [ECF No. 73 at 9–11], language that itself appears to sweep more broadly than the heading, which refers only to copyright, patent, trademark, and trade-secret infringement.  Accordingly, Plaintiffs have arguably conceded that their claims are also excluded under subsection (1) of the 2017–18 Policy, which is substantially identical to the first sentence of the 2016–17 Policy's intellectual property exclusion.  [ECF No. 74-4 at 38]; [ECF No. 74-3 at 40].

[13] Plaintiffs argue that Blackboard's interpretation—that the exclusion's heading does not limit the reach of the individual subsections—renders the heading superfluous.  [ECF No. 73 at 14–16].  Although Plaintiffs are correct that, under the Blackboard's interpretation, the heading has little independent meaning, the Court declines Plaintiffs' invitation to "rewrite the unambiguous terms" of the exclusion's substantive provisions on this basis, U.S. Liab. Ins. Co., 797 F.3d at 124 n.6, especially where doing so would render an entire substantive provision of the policy superfluous.

insured is entitled to the benefit of the one that is more favorable to it." (quoting <u>Trs. of Tufts Univ.</u>, 616 N.E.2d at 72 (emphasis added))).  The mere fact that Plaintiffs disagree with Blackboard's interpretation of the exclusion does not render it ambiguous as a matter of law. <u>See</u> <u>Brazas Sporting Arms, Inc.</u>, 220 F.3d at 5.

The Court notes that its conclusion—that the heading does not modify the plain language of the exclusion, which unambiguously barred coverage—is consistent with the District of Arizona's recent analysis of an identical policy in <u>Ratchford v. Watford Specialty Ins. Co.</u>, 659 F. Supp. 3d 1032 (D. Ariz. 2023), <u>appeal dismissed</u>, No. 23-cv-15462, 2024 WL 4360153 (9th Cir. July 24, 2024).  The <u>Ratchford</u> court described the placement of the heading as "slightly odd," but found that, when read in the context of the policy as a whole, it did not create any ambiguity regarding the scope of the exclusion.  <u>Id.</u> at 1040.  Specifically, the court found that the exclusion "must be read in conjunction with the phrase that begins the Exclusions section: 'This insurance does not apply to: . . . ,'" language that "only makes sense and forms full sentences when read in conjunction with the actual subsections, . . . rather than with the headings."  <u>Id.</u>  Although <u>Ratchford</u> applied Arizona, not Massachusetts, law, the Court finds its analysis persuasive, and agrees that, because the exclusion clearly applies to all of Plaintiffs' claims that fall within the 2017–18 Policy's coverage period, Blackboard had no duty to defend against or indemnify the Patrick Defendants for those claims.

Plaintiffs make several additional arguments as to why the Court should not enforce the 2017–18 Policy's exclusion, none of which ultimately carry the day.  First, Plaintiffs argue that the exclusion is void because Blackboard did not comply with Mass. Gen. Laws ch. 175, § 111A, which requires insurers who "eliminate[] or reduce[] certain coverages, conditions or definitions in . . . policies issued under this section" to provide printed notices to insured parties setting forth

the changes and invalidates eliminations and reductions in the absence of such notices.  See

[ECF No. 73 at 11–12].  Assuming, without deciding, that Mass. Gen. Laws ch. 175, § 111A

applies, which Blackboard disputes, [ECF No. 76 at 8–9], the Court's analysis of the Policies

causes it to disagree with the premise of Plaintiffs' argument, namely, that the 2017–18 Policy

eliminated coverage that the 2016–17 Policy provided, [ECF No. 73 at 11–12].  As discussed

supra, Plaintiffs' claims are excluded under either policy, and thus, Plaintiffs have not shown that

Blackboard "eliminate[d] or reduce[d]," Mass. Gen. Laws ch. 175, § 111A, coverage by

changing the language of the exclusion, such that it would have been required to provide printed

notices of the changes to the Patrick Defendants.  Cf. Whittaker Corp. v. Am. Nuclear Insurers,

671 F. Supp. 2d 242, 252 (D. Mass. 2009) (noting that absence of notice was "logical . . . given

[the insurer's] long-held position that [an endorsement] was merely an affirmation of existing

coverage and not a reduction in that coverage").  Moreover, even if the 2017–18 Policy did

violate Mass. Gen. Laws ch. 175, § 111A, the Court would be required to enforce the prior

policy, namely the 2016–17 Policy, which, as discussed supra, likewise bars coverage for

Plaintiffs' claims.  Thus, Mass. Gen. Laws ch. 175, § 111A provides no basis for holding that

Blackboard had a duty to defend or indemnify the Patrick Defendants for any of Plaintiffs'

claims.

Second, Plaintiffs argue that interpreting the 2017–18 Policy's intellectual property

exclusion bar to all personal and advertising injuries would nullify the very coverage that the

policy purports to offer, rendering the exclusion void as against public policy.  [ECF No. 73 at

17–20].  Under Massachusetts law, "[i]llusory coverage occurs when a provision in an insurance

policy 'negates the very coverage that the policy purports to provide,' and in so doing frustrates

the insured's reasonable expectations."  Bay Club Member's, LLC v. Selective Ins. Co., 701 F.

Supp. 3d 162, 174 (D. Mass. 2023) (quoting <u>Liberty Mut. Ins. Co. v. Tabor</u>, 553 N.E.2d 909, 911 (Mass. 1990)).  Coverage is not illusory, however, "if the [p]olicy 'still provides coverage for some acts.'"  <u>Id.</u> (citing <u>Bagley v. Monticello Ins. Co.</u>, 720 N.E.2d 813, 817 (Mass. 1999)); <u>see also</u> <u>Atl. Cas. Ins. Co. v. Price</u>, No. 15-cv-12889, 2016 WL 4007557, at *6 (D. Mass. July 26, 2016) (finding policy not illusory "simply because it has many exclusions" because there were "a number of events for which [the insured] would be provided coverage even considering all of the exclusions"); <u>Cohne v. Navigators Specialty Ins. Co.</u>, 361 F. Supp. 3d 132, 144 (D. Mass. 2019) ("[A]lthough the Limitation has a broader scope of exclusion than those that exclude only injuries resulting from assault and battery, the Policy still covers plenty of negligent conduct, and the Policy is not void as a matter of public policy.").  Here, although the intellectual property exclusion eliminates coverage for personal and advertising injuries arising out the of the use of another's image, it leaves intact coverage for other types of personal and advertising injuries, such as, for example, libel or slander not involving the use of another's image.  <u>See</u> [ECF No. 65 at 16].  The exclusion is thus not void as against public policy.

Third, Plaintiffs argue that the images used constitute "advertising ideas," and that the exclusion does not apply to advertising ideas.  [ECF No. 73 at 12–13]; <u>see also</u> [<u>id.</u> at 9–10 (making same argument for 2016–17 Policy)].  As discussed <u>supra</u>, the Court disagrees with this argument with respect to the 2016–17 Policy.  With respect to the 2017–18 Policy, it additionally fails for a more basic reason, which is that the exception for "advertising ideas" appears nowhere in the language of that policy's exclusion.  <u>See</u> [ECF No. 74-4 at 38].

Fourth, Plaintiffs argue that the words, as opposed to the images, used in certain posts by the Patrick Defendants separately triggered a duty to defend and indemnify under the Policies' libel and slander coverage.  [ECF No. 73 at 20]; <u>see also</u> [<u>id.</u> ("[T]he advertisement

of . . . Klaren, published during the 2017–18 policy period, is accompanied by the following statement: 'Even @hulkhogan himself would go STIFF in this situation.'")]; [ECF No. 74-1 at 36 (image of Ratchford accompanied by @bostonstripclubs Instagram caption: "If Only You Could Pay For LAP Dances With . . ." and tagging @abigailratchford)]; [ECF No. 74-2 at 2 (image of Milani with the caption "MEN HAVE BEEN TO THE MOON AND USE NUCLEAR ENERGY YET WE STILL DREAM ABOUT BOOBS" accompanied by the Golden Banana's description: "and I can see why…")]. As Blackboard points out, however, the amended complaint's defamation claims are based on the images alone, not on the words, [ECF No. 76 at 5 n.3], and, in any case, given the wide scope of the phrase "arising out of" under Massachusetts law, Brazas Sporting Arms, Inc., 220 F.3d at 6–7, the Policies' exclusions could arguably be applied to claims based on those words because any harm from those words was connected with the Patrick Defendants' use of the Plaintiffs' images.

## IV.    CONCLUSION

For the reasons set forth above, Blackboard's motion for summary judgment [ECF No. 64], is **GRANTED** and Plaintiffs' cross motion for summary judgment, [ECF No. 72], is **DENIED**.

**SO ORDERED.**

February 10, 2026                                    */s/ Allison D. Burroughs*
                                                       ALLISON D. BURROUGHS
                                                       U.S. DISTRICT JUDGE